IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| ABC DENTISTRY, P.A., et al., | § | BANKRUPTCY NO. H-16-34221-11 |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| DR. SAEED ROHI, | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-0682 |
| | § | |
| BREWER & PRITCHARD, | § | |
| A PROFESSIONAL CORPORATION, | § | |
| J. MARK BREWER AND | § | |
| A. BLAIRE HICKMAN, | § | |
| | § | |
| Appellees. | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses an appeal brought

by Dr. Saeed Rohi ("Rohi" or "Appellant") from the

1.  Memorandum Opinion dated February 21, 2019 (Adv.
    Doc. No. 32); and

2.  Dismissal Order dated February 21, 2019 (Doc, 420
    and Adv. Doc. No. 33)[1]

entered in Adversary No. 18-3205 filed in Bankruptcy Case No. H-16-

34221-11 (the "Bankruptcy Case").[2]  For the reasons explained

below, the Memorandum Opinion and Dismissal Order of the Bankruptcy

Court will be affirmed.

---

[1]Notice of Appeal, Docket Entry No. 1-1, p. 1 (citing Exhibits 1-3). Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system.

[2]Id.  See also Bankruptcy Record on Appeal ("BROA"), Docket Entry No. 2, pp. 559-78 (Memorandum Opinion), and p. 599 (Dismissal Order).  See also In re ABC Dentistry, P.A., No. 16-34221, 2019 WL 913356 (Bankr. S.D. Tex. Feb. 21, 2019).

# I. **Factual and Procedural Background**[3]

Appellant, Dr. Saeed Rohi, hired Appellees Brewer & Pritchard, PC ("Brewer & Pritchard"), J. Mark Brewer (Brewer) and A. Blaire Hickman ("Hickman") (collectively "Appellees" or "Lawyers") to prosecute breach of contract and <u>qui tam</u> claims based on the Texas Medicaid Fraud Prevention Act, Texas Human Resources Code § 36.001, <u>et seq.</u>, against ABC Dentistry, P.A., and others ("ABC Dentistry" or the "underlying defendants") in state court. Appellant and Brewer, acting on behalf of Brewer & Pritchard, entered into a contingency fee contract pursuant to which Brewer & Pritchard would "be paid a fee . . . contingent on the recovery of money or property."[4] The agreed upon fee would be 40% or 45% "of the Gross Recovery" depending on whether the case went to trial.[5] The contract defined "Gross Recovery" as

> the sum of any and all sums of money, notes or other
> property, real or personal, tangible or intangible, of
> any kind or nature, received from any party, and the
> forgiveness, reduction or elimination in whole or in part
> of any debt of any kind or nature which is owed or
> allegedly owed by Client.[6]

---

[3]<u>See</u> Brief of Appellant ("Appellant's Brief"), Docket Entry No. 8, pp. 13-17 ("Statement of facts"); Brief of Appellees ("Appellees' Brief"), Docket Entry No. 15, pp. 10-14 ("Statement of Facts"); and Memorandum Opinion, pp. 1-6, BROA, Docket Entry No. 2, pp. 559-64 ("Background").

[4]<u>See</u> Brewer & Pritchard, P.C. Contingent Fee Representation Agreement with Mandatory Arbitration Provision, BROA, Docket Entry No. 2, p. 305 ¶ 2.

[5]<u>Id.</u>

[6]<u>Id.</u> ¶ 3.

ABC Dentistry filed a chapter 11 bankruptcy petition on August 26, 2016 (Case No. H-16-34221-11).[7] After ABC Dentistry's bankruptcy filing, Appellant's state court lawsuit against the underlying defendants was removed from state to federal court as an adversary proceeding within ABC Dentistry's bankruptcy case.[8] The Bankruptcy Court ordered the parties in the _qui tam_ action to mediation on November 16, 2016.[9] The mediation resulted in an agreement memorialized in an "Amended Term Sheet" pursuant to which the underlying defendants agreed to be "jointly and severally liable to [Appellant] in the aggregate amount of $3.5 million,"[10] that amount would "be amortized monthly beginning on December 1, 2016 and continuing monthly until the effective date of a plan of reorganization incorporating the material terms of this Term Sheet (the 'Plan'),"[11] the amortized monthly payments would be "place[d] into the registry of the Court," and Appellant would "not be entitled to a disbursement of any such escrowed funds until the Effective Date of the Plan."[12]

---

[7] Memorandum Opinion, p. 1, BROA, Docket Entry No. 2, p. 559.

[8] _Id._ at 2, BROA, Docket Entry No. 2, p. 560.

[9] _Id._

[10] Amended Term Sheet, BROA, Docket Entry No. 2, p. 184 ¶1.

[11] _Id._

[12] _Id._ ¶¶ 1-2.

The State of Texas, which had to consent to settlement of the
qui tam claims, refused to consent to the terms of the "Amended
Term Sheet."[13]  On July 26, 2017, the Bankruptcy Court ordered the
parties to a second mediation and compelled the State of Texas to
attend.[14]  The second mediation resulted in agreement to a total
settlement amount of $4 million but no agreement as to how that
amount would be apportioned.[15]  In briefing submitted to the
Bankruptcy Court, Appellant proposed a division that treated the
settlement as a common fund and allocated the proceeds first by
deducting Appellant's and the State's individual claims in full,
then deducting attorney's fees based on contingency agreements, and
finally allocating 30% of the remaining proceeds to Appellant and
70% to the State.[16]  The State argued that the common fund doctrine
did not apply, and that Appellant was instead entitled to a pro
rata share of the proceeds.  The State also objected to payment of
Appellant's attorney's fees, arguing that such payment would
violate Texas law, which capped Appellant's recovery at 30% of the
proceeds.[17]  Despite lengthy negotiations, the parties failed to
reach an agreement on how to allocate the settlement proceeds.[18]

---

[13]Memorandum Opinion, p. 2, BROA, Docket Entry No. 2, p. 560.

[14]Id.

[15]Id.

[16]Id. at 3, BROA, Docket Entry No. 2, p. 561.  See also
Dr. Saeed Rohi's Brief on Equitable Distribution of Settlement
Proceeds, p. 6, BROA, Docket Entry No. 2, p. 117 ¶ 14.

[17]Memorandum Opinion, p. 3, BROA, Docket Entry No. 2, p. 561.

[18]Id.

On November 7, 2017, the Bankruptcy Court held a hearing to determine the appropriate division of the settlement proceeds.[19] The hearing was attended by attorneys for the State of Texas, by Appellant, who was represented by attorneys from Brewer & Pritchard who had represented him in the state court <u>qui tam</u> action, and by Charles Long ("Long"), who was hired to represent Appellant in the adversary proceeding.[20] The Bankruptcy Court began the hearing with a proposal to divide the proceeds based on the 45% contingency fee in Appellant's contract with Brewer & Pritchard.[21] When the Bankruptcy Court asked the parties if they opposed the proposed allocation, Long requested a break to consult with the Appellant.[22] Counsel for the State of Texas objected arguing that the 45% fee applied only if the case was called to trial and that event never occurred.[23] The Bankruptcy Court agreed, readjusted the figures, and proposed to divide the proceeds based on the 40% contingency fee in the Brewer & Pritchard contract: "1,599,000 to the State, 720,000 for Dr. Rohi, and 1,681,000 to the attorneys."[24] Following a ten minute break all parties consented to the Bankruptcy Court's proposed allocation of the settlement proceeds and waived their

---

[19]Transcript, BROA, Docket Entry No. 2, pp. 71-107.

[20]<u>Id.</u> at 3:10, BROA, Docket Entry No. 2, p. 73:10.

[21]<u>Id.</u> at 11-16, BROA, Docket Entry No. 2, pp. 81-86.

[22]<u>Id.</u> at p. 16:24-25, BROA, Docket Entry No. 2, p. 86:24-25.

[23]<u>Id.</u> at 20:15-21:1, BROA, Docket Entry No. 2, pp. 90:15-91:1.

[24]<u>Id.</u> at p. 22:10-11, BROA, Docket Entry No. 2, p. 92:10-11.

rights to an evidentiary hearing, written order, and appeal.[25] The Bankruptcy Court then issued an order by stating on the record: "The $4 million will be allocated $1,599,000 to the State of Texas, $720,000 to Dr. Rohi, and $1,681,000 to the attorneys representing Dr. Rohi to be divided by the attorneys in accordance with their own agreements."[26] The Bankruptcy Court memorialized its oral order in a docket entry that states: "The court announced and ordered the division of the proceeds of $4,000,000.00 as follows: $1,599,000.00 to the State of Texas; $720,000.00 to Dr. Rohi; $1,681,000.00 to the attorneys representing Dr. Rohi to be divided by the attorneys in accordance with their own agreements."[27]

A short time thereafter Appellant voted for and signed ABC Dentistry's plan of reorganization, the plan was confirmed,[28] ABC Dentistry started to make quarterly payments into the registry of the court,[29] and disbursements to the parties began in accordance

---

[25]Id. at pp. 34:8-36:23, BROA, Docket Entry No. 2, pp. 104:8-106:23.

[26]Id. at p. 37:4-7, BROA, Docket Entry No. 2, p. 107:4-7.

[27]BROA, Docket Entry No. 2, p. 69.

[28]Memorandum Opinion, pp. 4-5, BROA, Docket Entry No. 2, pp. 582-83. See also Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Joint Chapter 11 Plan of Reorganization of ABC Dentistry, P.A., ABC Dentistry West Orem, P.L.L.C., ABC Dentistry Old Spanish Trail, P.L.L.C., ABC Dentistry Hillcroft, P.L.L.C., ABC Dentistry Pasadena, P.A., and Iraj S. Jabbary, DDS Pursuant to Chapter 11 of the Bankruptcy Code ("Confirmation Order"), Appendix Tab 5 to Appellant's Brief, Docket Entry No. 9-5.

[29]Memorandum Opinion, pp. 4-5, BROA, Docket Entry No. 2, pp. 582-83.

with the Bankruptcy Court's November 7, 2017, Order.[30] The disbursements led to a dispute between Appellant and Appellees. Appellant contended that the Bankruptcy Court's Order entitled him to a total recovery of $2,401,000.00 (consisting of his award of $720,000.00 and the award of $1,681,000.00 to his attorneys), and that Appellees were only entitled to 40% of that amount pursuant to the Brewer & Pritchard contingency fee contract.[31] Appellees contended that Bankruptcy Court's November 7, 2017, Order made $720,000.00 payable to Appellant, and the fee award of $1,681,000.00 payable to them.[32]

On June 1, 2018, Appellant filed suit against Appellees in state court alleging breach of contract, breach of fiduciary duty, misapplication of fiduciary property, money had and received, and violations of the Texas Deceptive Trade Practices and Theft Liability Acts.[33]

On July 25, 2018, Appellees filed a Notice of Removal pursuant to 28 U.S.C. § 1452(a), Federal Rule of Bankruptcy Procedure 9027,

---

[30]Id. at 5, BROA, Docket Entry No. 2, p. 583.

[31]Id. (citing ECF 2 at 5, Motion to Dismiss Adversary Proceeding, Docket Entry No. 2 in Adversary Case No. 18-03205). The Motion to Dismiss Adversary Proceeding also appears in the BROA, Docket Entry No. 2, at pp. 35-189, but the copy in the BROA is redacted. See also Appendix to Appellant's Brief, Tab 10, Docket Entry No. 9-10.

[32]Memorandum Opinion, p. 5, BROA, Docket Entry No. 2, p. 583.

[33]Id. See also Plaintiff's Original Petition and Request for Disclosure, BROA, Docket Entry No. 2, pp. 23-32; and Appendix to Appellant's Brief, Tab 3, Docket Entry No. 9-3.

and Local Rule of Bankruptcy Procedure 9027-1, asserting that "[t]he Court has jurisdiction over one or more of the causes of action in the Removed Action pursuant to its 'arising under' or 'arising in' jurisdiction under 28 U.S.C. § 157(b)."[34] On July 26, 2018, Appellees filed a motion to dismiss arguing that Appellant's state court action was barred by res judicata pursuant to the Bankruptcy Court's November 7, 2017, Order.[35]

On August 3, 2018, Appellant filed a motion to remand and abstain.[36] After conducting hearings on August 13, 2018,[37] and September 20, 2018,[38] the Bankruptcy Court issued the February 21, 2019, Memorandum Opinion granting Appellees' motion to dismiss and denying Appellant's motion to remand and abstain, and the Dismissal Order from which Appellant appeals.[39]

---

[34]Defendants Brewer & Pritchard, P.C.'s, J. Mark Brewer's, and A. Blaire Hickman's Notice of Removal, p. 2 ¶ 2, BROA, Docket Entry No. 2, at p. 12 ¶ 2. See also Appendix to Appellant's Brief, Tab 8, Docket Entry No. 9-8.

[35]BROA, Docket Entry No. 2, pp. 35-189. See also Appendix to Appellant's Brief, Tab 10, Docket Entry No. 9-10.

[36]Plaintiff's Motion to Remand and Abstain, BROA, Docket Entry No. 2, pp. 216-65. See also Appendix to Appellant's Brief, Tab 11, Docket Entry No. 9-11.

[37]Transcript, BROA, Docket Entry No. 2, pp. 763-77.

[38]Transcript, BROA, Docket Entry No. 2, pp. 779-829.

[39]Notice of Appeal, Docket Entry No. 1-1, p. 1.

## II.  **Appellate Jurisdiction and Standards of Review**

Final judgments, orders, and decrees of a bankruptcy court may be appealed to a federal district court.  28 U.S.C. § 158(a). Because the district court functions as an appellate court, it applies the same standard of review that federal appellate courts use when reviewing district court decisions.  See Webb v. Reserve Life Insurance Co. (In re Webb), 954 F.2d 1102, 1103-04 (5th Cir. 1992).  This court reviews the Bankruptcy Court's findings of fact for clear error and its rulings on questions of law or mixed questions of law and fact de novo.  Id. at 1104.  See also Wooley v. Faulkner (In re SI Restructuring, Inc.), 542 F.3d 131, 134-35 (5th Cir. 2008).  The Bankruptcy Court's denial of Appellant's motion to remand, and granting of Appellees' Rule 12(b)(6) motion to dismiss are subject to de novo review.  See S.W.S. Erectors v. Infax, Inc., 72 F.3d 489, 492 (5th Cir. 1996) (motions to remand); Stokes v. Gann, 498 F.3d 483, 484 (5th Cir. 2007) (motions to dismiss).  The court reviews discretionary decisions of the Bankrutpcy Court for abuse of discretion.  Mendoza v. Temple-Inland Mortgage Corp. (In re Mendoza), 111 F.3d 1264, 1270 (5th Cir. 1997).  A bankruptcy court abuses its discretion when "its ruling is based on an erroneous review of the law or on a clearly erroneous assessment of the evidence."  Leonard v. Luedtke (In re Yorkshire, LLC), 540 F.3d 328, 331 (5th Cir. 2008)(per curiam) (citation omitted).

### III.  **Analysis**

Appellant "requests reversal of the Bankruptcy Court's order dated February 21, 2019 which denied Appellant's motions to remand and for mandatory and permissive abstention and granted Appellees Brewer & Pritchard, PC, J. Mark Brewer and A. Blaire Hickman's motion to dismiss."[40]  The issues on appeal are whether the Bankruptcy Court (1) erred by concluding that it had jurisdiction over Appellant's state law claims, (2) abused its discretion by declining to grant Appellees' requests for mandatory and/or permissive abstention, (3) erred by granting Appellees' motion to dismiss based on res judicata, and (4) abused its discretion by denying Appellant's request for leave to amend his complaint.

**A.  The Bankruptcy Court Did Not Err by Denying Appellant's Motion to Remand upon Concluding It had Subject Matter Jurisdiction**

Citing Travelers Indemnity Co. v. Bailey, 129 S. Ct. 2195 (2009), for its holding that a bankruptcy court has post-confirmation jurisdiction to interpret and enforce its own orders, the Bankruptcy Court held that "the underlying dispute centers on the interpretation of the Court's November 7, 2017 Order, conferring it with 'arising in or under' jurisdiction under 28 U.S.C. § 1334(b)."[41]  The Bankruptcy Court explained that

---

[40]Appellant's Brief, Docket Entry No. 8, p. 10.

[41]Memorandum Opinion, p. 7, BROA, Docket Entry No. 2, p. 565.

Before finding that jurisdiction exists to the enforce or interpret its own prior orders, the Court must determine the source of its jurisdiction which existed when the original order was issued. . . . The Court's November 7, 2017 Order resolved the qui tam action against ABC and divided the $ 4,000,000.00 of settlement proceeds from ABC's bankruptcy estate. The Order addressed a question that was within its core jurisdiction under 28 U.S.C. § 157 (b)(2)(A), (L), and (O) as "matters concerning the administration of the estate" and "proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship." This brings the Court's original Order within "arising in or under" jurisdiction, conferring the Court with jurisdiction to interpret and enforce that Order.[42]

Appellant argues the Bankrutpcy Court erred when it maintained jurisdiction over the purely state law claims asserted against his attorneys in state court.[43] Appellees argue that the Bankruptcy Court correctly held that it had jurisdiction over Appellant's claims because resolution of the underlying dispute requires interpretation of rights created by the Bankruptcy Court's November 7, 2017, Order dividing settlement proceeds which was incorporated by reference into the Confirmed Plan, and because this is a core proceeding.[44]

---

[42]Id. at 8-9, BROA, Docket Entry No. 2, pp. 566-67.

[43]Appellant's Brief, Docket Entry No. 8, pp. 20-30. See also Reply Brief of Appellant, Docket Entry No. 16, pp. 6-12.

[44]Appellees' Brief, Docket Entry No. 15, pp. 16-24.

1.  Applicable Law

Whether a court has bankruptcy jurisdiction is a legal determination subject to de novo review. See Newby v. Enron Corp. (In re Enron Corporation Securities), 535 F.3d 325, 333 (5th Cir. 2008) (citing United States of America, Internal Revenue Service v. Prescription Home Health Care, Inc. (In re Prescription Home Health Care, Inc.), 316 F.3d 542, 546-47 (5th Cir. 2002)). Bankruptcy courts find their source of jurisdiction in 28 U.S.C. §§ 157 and 1334. See Bass v. Denney (In re Bass), 171 F.3d 1016, 1021 (5th Cir. 1999) ("The holding of a bankruptcy court . . . that it has jurisdiction is a legal determination which we review de novo."). See also 28 U.S.C. § 157 (providing for referral of certain cases from district courts to bankruptcy courts), and 28 U.S.C. § 1334(a)-(b) (providing district courts with "original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11").

However, "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." Craig's Stores of Texas, Inc. v. Bank of Louisiana (In re Craig's Stores of Texas, Inc.), 266 F.3d 388, 390 (5th Cir. 2001) (citing Daleske v. Fairfield

Communities, Inc. (In re Fairfield Communities, Inc.), 142 F.3d 1093, 1095 (8th Cir. 1998), and Hospital & University Property Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 7 F.3d 32, 34 (2d Cir. 1993)). "This jurisdiction extends to matters that 'impact compliance with or completion of the reorganization plan.'" Highland Capital Management LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.), 522 F.3d 575, 589 (5th Cir. 2008) (quoting U.S. Brass Corp. v. Travelers Insurance Group, Inc. (In re U.S. Brass Corp.), 301 F.3d 296, 305 (5th Cir. 2002)). A bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders." Travelers, 129 S. Ct. at 2205 (citing Local Loan Co. v. Hunt, 54 S. Ct. 695, 697 (1934) ("That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits or advantages of a judgment or decree rendered therein, is well settled . . . These principles apply to proceedings in bankruptcy.")). See also Evercore Capital Partners II, L.L.C. v. Nancy Sue Davis Trust (In re Davis Offshore, L.P.), 644 F.3d 259, 262 n. 3 (5th Cir.), cert. denied, 132 S. Ct. 782 (2011) ("We are persuaded that [the Bankruptcy Court] had core jurisdiction to interpret the Plan and confirmation order pursuant to 28 U.S.C. § 157(b).").

2. <u>Application of the Law to the Record</u>

Acknowledging that "a bankruptcy court has jurisdiction to interpret or enforce its own orders,"[45] Appellant argues that

> here there is no order that needs interpretation or enforcement. [Appellant's] claims are not a collateral attack on the settlement allocation, and [Appellant] was not seeking to set aside the order. Rather, [Appellant] attacks conduct extrinsic to the ruling; that no matter the allocation of attorney's fees, h[e] and his lawyers agreed that the fees were part of the 'gross recovery' which they would share. A court can only retain jurisdiction if it had it in the first place and the bankruptcy court never had jurisdiction over this dispute because it was the conduct that took place after the allocation that "led to" the dispute.[46]

Citing <u>Travelers,</u> 129 S. Ct. at 2195, Appellees respond that

> [t]he bankruptcy court had "arising in" and "arising under" [jurisdiction] in this case because the underlying dispute centered on the interpretation of the court's November 7, 2017 order dividing the settlement proceeds, and the bankruptcy court has continuing jurisdiction to interpret and enforce its own orders.[47]

Appellant replies that "Appellees' jurisdictional argument is based upon the false premise that the resolution of [Appellant's] claims against them required the bankruptcy court to interpret and enforce the order dividing the settlement."[48]

Appellant's state court petition asserted causes of action for breach of fiduciary duty, breach of contract, misapplication of

---

[45]Appellant's Brief, Docket Entry No. 8, p. 18.

[46]<u>Id.</u> at 18-19.

[47]Appellees' Brief, Docket Entry No. 15, p. 18.

[48]Reply Brief of Appellant, Docket Entry No. 16, p. 6.

fiduciary property, money had and received, and violation of Texas'
Deceptive Trade Practices and Theft Liability Acts based on the
following allegations of fact:

> [T]he lawyer defendants breached their agreement to
> their client and subordinated his interests by paying
> themselves 70% contingency fee when the agreement
> entitled the lawyers to only 40% . . .

>                              . . .

> Dr. Saeed Rohifard ("Dr. Rohi" of "Plaintiff") hired
> Brewer & Pritchard, P.C. ("BP"), J. Mark Brewer
> ("Brewer") and A. Blaire Hickman ("Hickman")
> (collectively, "Defendants") to prosecute a qui tam claim
> against ABC Dental, Dr. Iraj Jabbary, Dr. Kauser Bari and
> others who were culpable or responsible for Medicaid
> fraud under the Texas False Claims Act, in addition to
> breach of contract (the "underlying case"). Pursuant to
> the attorney/client agreement ("Agreement"), Dr. Rohi and
> Defendants agreed that Defendants would be compensated on
> a contingency basis. Specifically, the Agreement
> provided that following:

>> If Counsel is successful, he will receive as
>> his fee a percentage of the Gross Recovery (as
>> that term is defined below), according to the
>> following schedule:

>> (a)  40% of all sums collected from and after
>>      30 days before the first trial setting of
>>      Client's claims.
>> (b)  45% of all sums collected from and after
>>      the case is called to trial.

> The underlying case was not called to trial. Therefore,
> Defendants were entitled to no more than 40% of all sums
> collected under the terms of the Agreement.

> The qui tam case settled for an amount that, under
> the terms of the Agreement, would entitle Defendants to
> no more than $960,400.00 in attorney's fees. However,
> Defendants breached the Agreement and placed their
> interests ahead of Dr. Rohi's and took for themselves
> approximately $1,681,000.00 in attorney's fees. This
> amounted to more than 70% of the total settlement and was

not only a breach of the Agreement, the fee was unconscionable and unethical as a matter of law.[49]

Appellant's state court petition does not mention the Bankruptcy Court's November 7, 2017, Order dividing the proceeds from settlement of his _qui tam_ action. But when Appellant's factual allegations are read in light of the court's record, they show that resolution of the claims asserted in the state court action are dependent upon the interpretation of rights created in bankruptcy, specifically those rights associated with the Bankruptcy Court's November 7, 2017, Order dividing the settlement proceeds.

The court's record reflects that the second mediation in the _qui tam_ action resulted in agreement to a total settlement amount of $4 million, but that despite lengthy negotiations, no agreement could be reached as to how that amount would be apportioned.[50] On November 7, 2017, the Bankruptcy Court conducted a hearing to apportion the settlement proceeds.[51] After initially proposing to divide the proceeds based on the 45% contingency fee in Appellant's contract with Brewer & Pritchard,[52] the Bankruptcy Court agreed with the argument made by the State of Texas that a 40% fee was appropriate because the case had not been called to trial.[53] The

---

[49]Plaintiff's Original Petition and Request for Disclosure, pp. 2-4, BROA, Docket Entry No. 2, pp. 24-26.

[50]Memorandum Opinion, p. 3, BROA, Docket Entry No. 2, p. 561.

[51]Transcript, BROA, Docket Entry No. 2, pp. 71-107.

[52]Id. at 11:9-16:22, BROA, Docket Entry No. 2, pp. 81:9-86:22.

[53]Id. at 20:15-22:11, BROA, Docket Entry No. 2, pp. 90:15-92:11.

Bankruptcy Court adjusted the figures and proposed to allocate: "1,599,000 to the State, 720[,000] for Dr. Rohi, and 1,681,000 to the attorneys."[54] Following a short break requested by Appellant's counsel,[55] the parties consented to the proposed allocation and waived their rights to an evidentiary hearing, written order, and appeal.[56] The Bankruptcy Court then ruled orally by stating on the record:

> Just to be sure then . . . I'm going to repeat it. Hopefully, it's exactly what I said before.
>
> The allocation of the settlement proceeds is now orally ordered for the reasons stated on the Record to be as follows: The $4 million will be allocated $1,599,000 to the State of Texas, $720,000 to Dr. Rohi, and $1,681,000 to the attorneys representing Dr. Rohi to be divided by the attorneys in accordance with their own agreements.[57]

The Bankruptcy Court memorialized its oral ruling in a docket entry stating: "The court announced and ordered the division of the proceeds of $4,000,000.00 as follows: $1,599,000.00 to the State of Texas; $720,000.00 to Dr. Rohi; $1,681,000.00 to the attorneys representing Dr. Rohi to be divided by the attorneys in accordance with their own agreements."[58]

---

[54]Id. at 22:10-11, BROA, Docket Entry No. 2, p. 92:10-11.

[55]Id. at 16:24-25, BROA, Docket Entry No. 2, p. 86:24-25.

[56]Id. at 34:18-36:20, BROA, Docket Entry No. 2, pp. 104:18-106:20.

[57]Id. at 36:24-37:7, BROA, Docket Entry No. 2, p. 106:24-107:7.

[58]BROA, Docket Entry No. 2, p. 69.

There is no dispute that the Bankruptcy Court had core jurisdiction over the Appellant's qui tam action.[59] Nor is there any dispute that the settlement proceeds from that action were paid by the estate in bankruptcy, that distribution of those settlement proceeds is material to consummation of the plan, and that the Bankruptcy Court's November 7, 2017, Order apportioning the settlement proceeds was incorporated into the plan confirmed on December 13, 2017, which the Bankruptcy Court retains jurisdiction to enforce. Despite his arguments to the contrary, Appellant's state court allegations that the qui tam action settled for an amount that entitled Appellees to no more than $960,400.00 in attorney's fees,[60] show not only that the causes of action asserted in the removed action are based on rights created by the Bankruptcy Court's November 7, 2017, Order, but also that those causes of action require interpretation of that order because they challenge that order's allocation of $720,000.00 to Appellant and $1,681,000.00 to his attorneys. Since, moreover, the November 7, 2017, Order was entered in a core proceeding, the Bankruptcy Court did not err in determining that it had "arising in or under jurisdiction" over the removed action.[61] Traveler's, 129 S. Ct. at 2205 (recognizing that a bankruptcy court "plainly has jurisdiction to interpret and enforce its own prior orders").

---

[59]Reply Brief of Appellant, Docket Entry No. 16, p. 13 ("Dr. Rohi does not dispute that the underlying proceeding was a core proceeding.").

[60]Plaintiff's Original Petition and Request for Disclosure, pp. 2-4, BROA, Docket Entry No. 2, pp. 24-26.

[61]Memorandum Opinion, p. 9, BROA, Docket Entry No. 2, p. 567.

**B.  The Bankruptcy Court Did Not Abuse its Discretion by Denying Appellant's Requests for Mandatory and Permissive Abstention**

Appellant argues that "[e]ven if the bankruptcy court had jurisdiction, mandatory abstention was appropriate because all factors were satisfied.  At a minimum the bankruptcy court should have permissibly abstained."[62]  Asserting that "[t]he bankruptcy court considered only one permissive abstention factor which weighed in favor of retention,"[63] Appellant argues that "[a]ll thirteen of the other fourteen factors weighed in favor of abstention.  Failing to properly apply these principles and abstain was an abuse of discretion."[64]  Appellees respond that "[t]he bankrutpcy court was not required to mandatorily abstain,"[65] and "correctly declined to permissively abstain."[66]

1.  Applicable Law

The conclusion that the Bankruptcy Court had subject matter jurisdiction to clarify or interpret its November 7, 2017, Order apportioning the settlement proceeds from the Appellant's qui tam action, does not necessarily require the Bankruptcy Court to

---

[62]Appellant's Brief, Docket Entry No. 8, p. 19.

[63]Id.

[64]Id.

[65]Appellees' Brief, Docket Entry No. 15, p. 25.

[66]Id. at 27.

exercise jurisdiction. As explained by the Supreme Court, "It is black letter law . . . that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action." <u>Gulf Offshore Co. v. Mobil Oil Corp.</u>, 101 S. Ct. 2870, 2875-76 (1981). <u>See also Malesovas v. Sanders</u>, No. H-04-3122, 2005 WL 1155073, *3 n. 6 (S.D. Tex. May 16, 2005) ("Orders of bankruptcy courts, like those of other courts, can also be interpreted by other courts of competent jurisdiction. Thus, state courts are qualified to interpret the language of bankruptcy plans and orders and routinely engage in such interpretation.") (quoting <u>Kmart Creditor Trust v. Conway (In re Kmart Corp.)</u>, 307 B.R. 586, 596 (Bankr. E.D. Mich. 2004)).

A bankruptcy court's power to abstain derives from 28 U.S.C. § 1334(c), which states in pertinent part:

(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

-20-

28 U.S.C. § 1334(c)(1)-(2). Decisions by bankruptcy courts not to abstain under § 1334(c) are reviewed for abuse of discretion. _See Edge Petroleum Operating Co., Inc. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)_, 483 F.3d 292, 299 (5th Cir.), _cert. denied,_ 128 S. Ct. 613 (2007) (citing _Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)_, 163 F.3d 925, 929 (5th Cir.), _cert. denied_, 119 S. Ct. 2339 (1999)).

### 2. Application of the Law to the Record

#### (a) Mandatory Abstention

The Fifth Circuit interprets 28 U.S.C. § 1334(c)(2) "to mandate federal court abstention where: '(1) the claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding, [i.e., it is related to a case under title 11 but does not arise under or in a case under title 11]; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court. _In re TXNB Internal Case_, 483 F.3d at 300 (quoting _Schuster v. Mims (In re Rupp & Bowman)_, 109 F.3d 237, 239 (5th Cir. 1997)).

Appellant argues that "[b]ecause all elements of mandatory abstention were satisfied, the bankruptcy court had no discretion but to remand this case."[67] Asserting that the claims Appellant asserted in the state court act are core proceedings, Appellees

---

[67]Appellant's Brief, Docket Entry No. 8, p. 36.

respond that the Bankruptcy Court was not required to mandatorily abstain.[68] Appellant replies that he "does not dispute that the underlying proceeding was a core proceeding, but this dispute between non-debtor parties over proceeds which are not assets of the estate, and the resolution of which will have no conceivable effect on the estate, is not a core proceeding."[69] Appellant argues that "Appellees may not use an order from a core proceeding which has no bearing on the claims in this case to create jurisdiction which does not otherwise exist."[70]

Whether the Bankruptcy Court abused its discretion by failing to mandatorily abstain turns on whether the claims that Appellant asserted in the state court action constitute core or non-core proceedings. Citing Traveler's, 129 S. Ct. at 2205, the Bankruptcy Court rejected Appellant's argument for mandatory abstention, holding in pertinent part that

> when an order resolves a core proceeding, the interpretation and enforcement of that order is also a core proceeding. . . .
>
> . . . The Court's November 7, 2017[,] Order resolved the qui tam action against ABC and divided the $4,000,000.00 of settlement proceeds from ABC's bankruptcy estate. The Order addressed a question that was within its core jurisdiction under 28 U.S.C. § 157(b)(2)(A), (L), and (O) as "matters concerning the administration of the estate" and "proceedings affecting the liquidation of the assets of the estate or the

---

[68]Appellees' Brief, Docket Entry No. 15, pp. 25-27.

[69]Reply Brief of Appellant, Docket Entry No. 16, p. 13.

[70]Id.

adjustment of the debtor-creditor or the equity security holder relationship.[71]

Other courts have similarly held that a bankruptcy court's enforcement of its prior order is a "core" matter. See Angel v. K Realty Development, LLC (In re Chiron Equities, LLC), 552 B.R. 674, 684-85 (Bankr. S.D. Tex. 2016) (citing, inter alia, White v. Kubotek Corp., 487 B.R. 1, 7 (D. Mass. 2012) ("The Bankruptcy Court had statutory authority to rule because interpreting and enforcing an order resulting from a prior 'core proceeding' also constitutes a 'core proceeding.'"); Texaco Inc. v. Sanders (In re Texaco, Inc.), 182 B.R. 937, 943-44 (Bankr. S.D.N.Y. 1995) (a bankruptcy court's interpretation and enforcement of a previous order is a core proceeding)). For the reasons stated in § III.A.2, above, the court has already concluded that resolution of the claims asserted in state court require interpretation of the Bankruptcy Court's November 7, 2017, Order. The Bankruptcy Court therefore did not abuse its discretion in holding that mandatory abstention was not required because this is a core proceeding. See Galaz v. Katona ("In re Galaz), No. 5:14-CV-967, 2015 WL 5565266, at *7 (W.D. Tex. Sept. 21, 2015), aff'd, 841 F.3d 316 (5th Cir. 2016) ("Because the Court has decided that . . . this [is a] core proceeding, mandatory abstention is inapplicable, and the bankruptcy court did not err in failing to exercise it.")).

---

[71]Memorandum Opinion, pp. 8-9, BROA, Docket Entry No. 2, pp. 566-67.

(b)  Permissive Abstention

The Fifth Circuit has said that a bankrutpcy court in its discretion may abstain from deciding either core or non-core proceedings under 28 U.S.C. § 1334(c)(1), "in the interest of justice, or the interest of comity with State courts or respect for state law." Wood v. Wood (In re Wood), 825 F.2d 90, 93 (5th Cir. 1987) (recognizing that 28 U.S.C. § 1334(c)(1) provides bankruptcy courts "broad power to abstain whenever appropriate").  Permissive abstention may be implemented in conjunction with the bankruptcy jurisdiction removal statute, which provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b).  Factors courts consider when deciding motions for permissive abstention and equitable remand include: (1) the effect or lack thereof on the efficient administration of the estate if the court remands or abstains; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficult or unsettled nature of applicable law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy proceeding; (5) the jurisdictional basis, if any, other than § 1334; (6) the degree of relatedness or remoteness of a proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to

-24-

be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action. See McVey v. Johnson, DeLuca, Kurisky & Gould (In re SBMC Healthcare, LLC), 519 B.R. 172, 190 (Bankr. S.D. Tex. 2014), aff'd, Civil Action No. H-16-2947, 2017 WL 2062992 (S.D. Tex. May 11, 2017). See also Browning v. Navarro, 743 F.2d 1069, 1076-77 n. 21 (5th Cir. 1984) (setting forth factors considered for equitable remand).

Appellant argues that the Bankrutpcy Court abused its discretion when it denied his motion for permissive abstention or equitable remand because "[t]he bankruptcy court did not balance the[] fourteen factors, it considered only one: whether it had core jurisdiction over these claims."[72] Appellant argues that the single factor considered by the Bankruptcy Court was decided incorrectly, and that the remaining thirteen factors weigh in favor of permissive abstention.[73] Appellant argues that the Bankruptcy Court incorrectly determined that this is a core proceeding because

> the "heart of this dispute" is not whether the allocation
> was correct, but whether the Lawyers conduct extrinsic to
> the order was a breach of contract and/or breach of

---

[72]Appellant's Brief, Docket Entry No. 8, pp. 36-37.

[73]Id. at 37-44.

-25-

fiduciary duty. . . . Because the bankruptcy court erred by misconstruing these claims as core, it abused its discretion when it declined to permissively abstain.[74]

Appellees argue that the Bankruptcy Court did not abuse its discretion by denying Appellant's motion for permissive abstention and/or equitable remand because the Bankruptcy Court

correctly determined that all of Rohi's arguments under the factors misleadingly frame the claim as a dispute over the fee agreement with his attorneys, when, instead, the heart of the dispute involved the interpretation of the court's November 7, 2017[,] order that divided the settlement proceeds.[75]

Appellees also argue that

a review of the permissive abstention considerations demonstrate that the trial court's decision was correct. Of the fourteen factors . . . that a court may consider in determining permissive abstention, the majority favor the denial of permissive abstention in this case. For example, factors 1, 2, 3, 5, 6, 7, 8, 9, 10 and 13 all support the bankruptcy court's decision.[76]

Appellant replies by undertaking his own analysis of the factors and concluding that "of the 14 factors, 12 favor abstention and 2 are neutral. Because the scale tips so heavily in favor of abstention, the bankruptcy court abused its discretion by declining to abstain."[77]

---

[74]Id. at 37.

[75]Appellees' Brief, Docket Entry No. 15, p. 28.

[76]Id. at 28-29.

[77]Reply Brief of Appellant, Docket Entry No. 16, p. 20.

The Bankruptcy Court held that Appellant's "argument that permissive abstention and equitable remand weigh in favor of remanding the dispute to state court are denied."[78] The Bankruptcy Court explained:

> [Appellant] claims that because there is no effect on the administration of ABC's bankruptcy estate and that his causes of action are based on state law claims, the equities of his suit weigh in favor of permissive abstention. (ECF No. 14 at 21-24).
>
> The majority of [Appellant's] arguments frame his claim as a dispute over the contingency fee agreement with Brewer & Pritchard. However, . . . the heart of this dispute involves the interpretation of the Court's November 7, 2017 Order which divided the settlement proceeds. The interpretation of the contingency fee contract between [Appellant] and Brewer & Pritchard is not in dispute. As set forth in detail below, the Court applied the contract's provisions when it issued the November 7, 2017 Order. Any interpretive disputes were resolved by the Order.[79]

The Bankruptcy Court did not abuse its discretion by denying Appellant's motion for permissive abstention or equitable remand. Although the Bankruptcy Court's Memorandum Opinion did not address each of the 14 factors individually, it referenced and rejected Appellant's arguments that the 14 factors supported his motion for permissive abstention and/or equitable remand.

This court's own review of those factors leads to the same conclusion as that reached by the Bankruptcy Court, i.e., that

---

[78]Memorandum Opinion, p. 9, BROA, Docket Entry No. 2, p. 567.

[79]Id. (citing Plaintiff's Motion to Remand and Abstain, Docket Entry No. 14 in Case No. 16-34221, pp. 21-24; BROA, Docket Entry No. 2, pp. 236-39.

despite Appellant's strenuous efforts to establish that resolution of this dispute requires interpretation of the contingency fee contract that he entered with Brewer & Pritchard, this dispute actually requires interpretation of the Bankruptcy Court's November 7, 2017, Order dividing the settlement proceeds because the Bankruptcy Court applied the contingency fee contract's provisions and resolved any interpretive disputes when it issued the November 7, 2017, Order. The court concludes that Appellant's claim to a greater percentage of the settlement proceeds has a negative effect on the efficient administration of the bankruptcy estate (factor 1); bankrutpcy issues, not state law issues predominate because Appellant's claim to a greater percentage of the settlement proceeds is based on rights created by the Bankruptcy Court's November 7, 2017, Order (factor 2); the nature of the applicable law is bankruptcy law, not state law (factor 3); Appellant's claims constitute a challenge to the Bankruptcy Court's November 7, 2017, Order allocation of proceeds from settlement of the qui tam action (factor 6); resolution of Appellant's claims require interpretation of the Bankruptcy Court's November 7, 2017, Order, which constitutes a core proceeding (factor 7); there are no state law claims to sever because Appellant's claims involve a core bankruptcy matter (factor 8); there is no indication that this case burdens the Bankrutpcy Court (factor 9); this case involved forum shopping by Appellant, who brought his claims in state court

(factor 10); and there is no issue of comity as there are no state law issues to resolve (factor 13). Because resolving the claims that Appellant asserted in state court required interpretation of the Bankruptcy Court's November 7, 2017, Order, the court concludes that the factors of convenience and comity weighed heavily in favor of keeping the case in the federal court, and that the Bankruptcy Court did not abuse its discretion by denying Appellant's motion for permissive abstention and/or equitable remand.

## C. The Bankruptcy Court Did Not Err by Granting Appellees' Motion to Dismiss Based on Res Judicata

Appellant argues that "[e]ven if the bankruptcy court had jurisdiction over the state court lawsuit, it erred when it dismissed the claims based on res judicata."[80] Asserting that "[t]he parties to the suits are not identical,"[81] "there is no prior judgment by a court of competent jurisdiction,"[82] and "there is no prior judgment on the merits,"[83] Appellant argues that he "had no actual or imputed knowledge of his claims against the Lawyers and the claims were not and could not have been part of the first judgment for the obvious reason that the claims arose afterwards."[84]

---

[80]Appellant's Brief, Docket Entry No. 8, p. 20.

[81]Id.

[82]Id.

[83]Id.

[84]Id. See also Reply Brief of Appellant, Docket Entry No. 16, pp. 20-31 (arguing that res judicata does not apply).

Appellees respond that the Bankruptcy Court did not err because Appellant's claims that he is entitled to a different amount of the settlement proceeds awarded to him by the November 7, 2017, Order are barred under the res judicata doctrine.[85]

1.  Applicable Law

The doctrine of res judicata is comprised of two distinct but related doctrines: (1) true res judicata (or claim preclusion) and (2) collateral estoppel (or issue preclusion).  Test Masters Educational Services, Inc. v. Singh, 428 F.3d 559, 571 (5th Cir. 2005), cert. denied, 126 S. Ct. 1662 (2006).  The relevant doctrine here is true res judicata or claim preclusion.  Claim preclusion bars the litigation of claims that have been or should have been raised in an earlier suit.  Id. (citing Petro-Hunt L.L.C. v. United States, 365 F.3d 385, 395 (5th Cir.), cert. denied, 125 S. Ct. 808 (2004)).  Under federal common law the test for res judicata has four elements:

> (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.

Id.  "The res judicata effect of a prior judgment is a question of law that this court reviews de novo."  Id.

---

[85]Appellees' Brief, Docket Entry No. 15, pp. 30-46.

Although "generally a res judicata contention cannot be brought in a motion to dismiss [because] it must be pleaded as an affirmative defense," Test Masters, 428 F.3d at 570 n. 2, dismissal under Rule 12(b)(6) on res judicata grounds may be appropriate when the elements of res judicata are apparent on the face of the pleadings. See Kansa Reinsurance Co., Ltd. v. Mortgage Corporation of Texas, 20 F.3d 1362, 1366 (5th Cir. 1994) ("when a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate"). In ruling on such a motion, the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken including, inter alia, matters of public record. Test Masters, 428 F.3d at 570 n. 2. See also Meador v. Oryx Energy Co., 87 F. Supp. 2d 658, 663-67 (E.D. Tex. 2000) (granting 12(b)(6) motion to dismiss because res judicata barred plaintiff's claims).

2.  Application of the Law to the Record

(a)  The Parties Are Identical

Asserting that Appellees were not parties to the underlying suit because they represented Appellant and his interests and not their own interests, Appellant argues that "[t]he petition does not allege, and the [Appellees] provide no evidence to establish, that they (as opposed to [Appellant]) were parties in the underlying

proceedings.[86] Appellees respond that the parties were identical or in privity with one another because the contingency fee agreement that they entered with Appellant had an assignment clause that granted them rights to the proceeds of the settlement.[87] Citing Dow Chemical Co. v. Benton, 357 S.W.2d 565, 568 (Tex. 1962), Appellant replies that "an attorney with a contingent fee contract is not so directly interested in the subject matter of the lawsuit as to make him a 'party' [in the litigation]."[88]

In Dow Chemical, the plaintiff's suit was dismissed because of the plaintiff's refusal to appear for a deposition. His attorney, who had been assigned an interest in the plaintiff's case, filed suit claiming an ownership interest in the plaintiff's case and seeking to proceed with the case in an effort to protect his own interest. Id. at 566. The Texas Supreme Court held that the attorney could not make a recovery because his interest was derived from the plaintiff's claim, and the plaintiff had no further claim because the case had been dismissed. Id. at 567. The court explained that

> [t]he attorney-client relationship is one of principal and agent. Texas Employers Ins. Ass'n v. Wermske, Tex., 349 S.W.2d 90 (1961). Therefore, the rights of each in a cause of action during the existence of that relationship are necessarily dependent upon and

---

[86]Appellant's Brief, Docket Entry No. 8, pp. 47-48.

[87]Appellees' Brief, Docket Entry No. 15, pp. 31-32.

[88]Reply Brief of Appellant, Docket Entry No. 16, p. 21.

inseparably interwoven with the other. . . There is but
one cause of action. Our decisions uphold an agreement
to assign a part of the recovery on the cause of action
to the attorney. But we have never held that the cause
of action is divisible and may be tried for only a
percentage of the cause of action.

Id. The Court also explained that

[s]ince the case of Winston v. Masterson, 87 Tex. 200, 27
S.W. 768 [(Tex. 1894) (per curiam)], it has been the law
in Texas that an attorney with a contingent fee contract
is not so directly interested in the subject matter of a
lawsuit as to make him a "party' within the meaning of
the statute disqualifying a judge who is related to a
party in a case tried before him.

Id. at 568. Citing Indemnity Insurance Co. of North America v.

McGee, 356 S.W. 666 (Tex. 1962), however, the Court acknowledged

that "[a]n exception to this rule is in cases where the judge must

approve the attorney's fee. . . This exception was defined in

Postal Mutual Indemnity Co. v. Ellis, [169 S.W.2d 482 (Tex.

1943)]." Id.

In McGee the Texas Supreme Court held that an attorney in a

workers' compensation case to whom the final judgment awarded one-

fourth of the plaintiff's recovery was a party to the case. 356

S.W.2d at 667-68. The Court explained:

This Court held in the case of Postal Mutual Indemnity
Co. v. Ellis, 140 Tex. 570, 169 S.W.2d 482, that the
plaintiff's attorney in a workmen's compensation case is
a party to the suit. This decision was reached primarily
because of the provision . . . which requires the judge
to award the attorney's fees out of the plaintiff's
recovery. That opinion said:

. . . The record discloses that the plaintiff
and his attorney by their pleadings invoked
the jurisdiction of the court for the decision

> of that issue (attorney's fees). The attorney
> was directly interested in the decision of the
> question. He was one of the contending
> parties as against the employee as to the
> value of the services rendered by him and the
> amount of the fee to be allowed therefor, and
> it was within the power of the judge to favor
> him in the decision of that question. It can
> hardly be said that he was not a party to and
> directly interested in the controversial
> issues thus presented. . . .

356 S.W.2d at 667. The facts of this case are analogous to those
at issue in <u>McGee</u> and <u>Ellis.</u>

The record discloses that Appellant and his attorneys,
Appellees, invoked the jurisdiction of the Bankruptcy Court to
apportion the proceeds from settlement of the <u>qui tam</u> action.
Appellees were directly interested in the apportionment pursuant to
the assignment clause in their contingency fee contract with
Appellant which provided:

> **Assignment.** Client hereby grants to J. Mark Brewer an
> express interest in and to all Client's claims arising
> out of the above-referenced claims and any recovery
> received thereon, such interest being equal to the
> contingent free percentage then applicable under this
> agreement; and Client does hereby authorize counsel to
> receive the proceeds of any settlement or payment of any
> judgment, to retain that portion of the recovery which
> represents fees, to deduct from such proceeds any costs
> and expenses advanced on Client's behalf which remain
> unpaid, and to disburse the balance of the proceeds to
> Client. It is understood and agreed that the conveyance
> of such interest is a present assignment of an interest
> in the claim and shall in no way be construed as a
> security interest or lien; *provided however*, that Client
> acknowledges the Counsel has, or may acquire, an

attorney's lien with respect to the representation created by this agreement.[89]

Because Appellees were directly interested in apportionment of the settlement proceeds, they were contending parties together with Appellant and the State of Texas at the November 7, 2017, hearing held to apportion the settlement proceeds. The court therefore concludes that the first element of the res judicata analysis is satisfied because Appellees were parties to the underlying action that resulted in the November 7, 2017, Order.

(b) The Prior Judgment Was Rendered by a Court of Competent Jurisdiction

Appellant acknowledges that the Bankrutpcy Court had jurisdiction over the underlying qui tam action, and that when the parties could not agree how to divide the settlement proceeds from the qui tam action, they agreed to have the Bankruptcy Court decide how to divide the proceeds.[90] The November 7, 2017, Order of the Bankruptcy Court dividing the settlement proceeds was, therefore, a prior judgment rendered by a court of competent jurisdiction. Citing American Home Assurance Co. v. Chevron, USA, Inc., 400 F.3d

---

[89]Brewer & Pritchard, P.C. Contingent Fee Representation Agreement with Mandatory Arbitration Provision, p. 2 ¶ 7, BROA, Docket Entry No. 2, p. 306, ¶ 7.

[90]See Memorandum Opinion, p. 3, BROA, Docket Entry No. 2, p. 561. See also Transcript of November 7, 2017, Hearing, pp. 24:9-14, and 34:18-35:17, BROA, Docket Entry No. 2, pp. 94:9-14, and 104:18-105:17.

265, 272 (5th Cir. 2005), for its holding that "[t]he doctrine of res judicata does not bar a party from bringing a claim that arose subsequent to a prior judgment involving the same parties,"[91] Appellant argues that "the November 2017 order cannot act as a prior judgment because [Appellant's] claims did not arise until after that time."[92] This argument addresses whether the same claims or causes at action were at issue in both actions, which is analyzed in § III.C.2(d), below, not whether the prior judgment was issued by a court of competent jurisdiction.

### (c) There Was a Final Judgment on the Merits

Appellant does not dispute that a short time after the Bankruptcy Court issued the November 7, 2017, Order dividing the settlement proceeds he voted for and signed ABC Dentistry's plan of reorganization, the plan was confirmed,[93] ABC Dentistry started to make quarterly payments into the registry of the court,[94] and disbursements to the parties began in accordance with the

---

[91]Appellant's Brief, Docket Entry No. 8, p. 49.

[92]Id. at 48.

[93]Memorandum Opinion, pp. 4-5, BROA, Docket Entry No. 2, pp. 582-83. See also Confirmation Order, Appendix Tab 5 to Appellant's Brief, Docket Entry No. 9-5.

[94]Memorandum Opinion, pp. 4-5, BROA, Docket Entry No. 2, pp. 582-83.

Bankruptcy Court's November 7, 2017, Order.[95] Nor does Appellant dispute that neither the November 7, 2017, Order nor the confirmation of ABC Dentistry's plan was appealed. There was, therefore, a final judgment on the merits in the prior action. Appellant argues that there was no final judgment on the merits because "the bankruptcy court erroneously confused a decision on the merits over the attorney fee dispute between [him] and the State (which did occur) with a decision on the merits over an attorney fee dispute between [him] and the Lawyers (which did not occur because it did not yet exist."[96] This argument addresses whether the same claims or causes at action were at issue in both actions, which is analyzed in § III.C.2(d), below, not whether there was a final judgment on the merits.

(d) The Same Claims Were Involved in Both Cases

Appellant advances three reasons why the same cause of action was not involved in both cases. First, because Appellees did not file a fee application and there was no hearing on the reasonableness of their fees.[97] Second, the Appellant's

---

[95]Id. at 5, BROA, Docket Entry No. 2, p. 583.

[96]Appellant's Brief, Docket Entry No. 8, p. 49.

[97]Id. at 54-55.

"malpractice-related claims did not arise until **after** the settlement allocation."[98]  Third, Appellant argues that

> the issue here is not whether the attorney fees awarded to the Lawyers by and through [Appellant] were reasonable, but whether the fee awarded should have been included in the "gross recovery" to [Appellant] and split in accordance with the terms of the parties' agreements. CR25-30. . . . [T]he claims here relate to conduct unrelated to the legal services during the bankruptcy and the bankruptcy court's allocation because the complained-of conduct occurred post-allocation. The first judgment settled the dispute between [Appellant] and the State and allocated the $4 million settlement whereas this dispute is based on the [Appellees] failure, after this allocation, to abide by their agreements and promises to include the attorney fee allocation (whatever it may be) as part of the gross recovery to be shared with [Appellant]. . . These are not the same causes of action.[99]

Appellees respond that the same cause of action is involved in both cases.[100]

The Fifth Circuit employs the transactional test of the Restatement (Second) of Judgments to determine whether the cases involve the same claim or cause of action. <u>Test Masters,</u> 428 F.3d at 571 (citing <u>Petro-Hunt,</u> 365 F.3d at 396). "If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred. <u>Id.</u> (citing <u>New York Life Insurance Co. v. Gillispie,</u> 203 F.3d 384, 387 (5th Cir. 2000)). "The critical issue is whether the two actions are based on the

---

[98]<u>Id.</u> at 55.

[99]<u>Id.</u> at 55-56.

[100]Appellees' Brief, Docket Entry No. 15, pp. 38-42.

'same nucleus of operative facts.'" Id. (quoting Gillispie, 203 F.3d at 387). If the cases are based on the same nucleus of operative facts, "the prior judgment's preclusive effect extends to all rights the original plaintiff had with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose." Id. (quoting Petro-Hunt, 365 F.3d at 395-96). Determining whether the same nucleus of operative facts is present requires the court to analyze the factual predicate of the claims asserted. Eubanks v. Federal Deposit Insurance Corporation, 977 F.2d 166, 171 (5th Cir. 1992).

Appellant's state court petition asserted causes of action for breach of fiduciary duty, breach of contract, misapplication of fiduciary property, money had and received, and violation of Texas' Deceptive Trade Practices and Theft Liability Acts based in pertinent part on the following allegations of fact:

> [T]he lawyer defendants breached their agreement to their client and subordinated his interests by paying themselves 70% contingency fee when the agreement entitled the lawyers to only 40% . . .
>
> . . .
>
> Dr. Saeed Rohifard ("Dr. Rohi" of "Plaintiff") hired Brewer & Pritchard, P.C. ("BP"), J. Mark Brewer ("Brewer") and A. Blaire Hickman ("Hickman") (collectively, "Defendants") to prosecute a qui tam claim against ABC Dental, Dr. Iraj Jabbary, Dr. Kauser Bari and others who were culpable or responsible for Medicaid fraud under the Texas False Claims Act, in addition to breach of contract (the "underlying case"). Pursuant to the attorney/client agreement ("Agreement"), Dr. Rohi and Defendants agreed that Defendants would be compensated on a contingency basis. . .

-39-

. . .

> The qui tam case settled for an amount that, under
> the terms of the Agreement, would entitle Defendants to
> no more than $960,400.00 in attorney's fees. However,
> Defendants breached the Agreement and placed their
> interests ahead of Dr. Rohi's and took for themselves
> approximately $1,681,000.00 in attorney's fees. This
> amounted to more than 70% of the total settlement and was
> not only a breach of the Agreement, the fee was
> unconscionable and unethical as a matter of law.[101]

The parties to the underlying _qui tam_ action reached a settlement agreement for the sum of $4,000,000.00, but could not reach agreement regarding the allocation of the settlement proceeds. All parties, including the Appellant, agreed that the Bankruptcy Court would decide how to allocate the settlement proceeds. On November 7, 2017, the Bankruptcy Court held a hearing to determine the appropriate division of the settlement proceeds.[102] Appellant attended the hearing. The Bankruptcy Court began the hearing with a proposal to divide the proceeds based on the 45% contingency fee in Appellant's contract with Brewer & Pritchard.[103] Counsel for the State of Texas objected arguing that the 45% fee applied only if the case was "called to trial" and "that event never occurred."[104] The Bankruptcy Court agreed, readjusted the

---

[101]Plaintiff's Original Petition and Request for Disclosure, pp. 2-4, BROA, Docket Entry No. 2, pp. 24-26.

[102]Transcript, BROA, Docket Entry No. 2, pp. 71-107.

[103]Id. at 11-16, BROA, Docket Entry No. 2, pp. 81-86.

[104]Id. at 20:15-21:1, BROA, Docket Entry No. 2, pp. 90:15-91:1.

figures, and proposed to divide the proceeds based on the 40%
contingency fee in the Brewer & Pritchard contract: "1,599,000 to
the State, 720,000 for Dr. Rohi, and 1,681,000 to the attorneys."[105]
Following a short break all parties, including Appellant, consented
to the Bankruptcy Court's proposed allocation of the settlement
proceeds and waived their rights to an evidentiary hearing, written
order, and appeal.[106] The Bankruptcy Court then issued its Order by
stating on the record: "The $4 million will be allocated $1,599,000
to the State of Texas, $720,000 to Dr. Rohi, and $1,681,000 to the
attorneys representing Dr. Rohi to be divided by the attorneys in
accordance with their own agreements."[107] The Bankruptcy Court
memorialized its oral order in a docket entry that states: "The
court announced and ordered the division of the proceeds of
$4,000,000.00 as follows: $1,599,000.00 to the State of Texas;
$720,000.00 to Dr. Rohi; $1,681,000.00 to the attorneys
representing Dr. Rohi to be divided by the attorneys in accordance
with their own agreements."[108]

Appellant's allegations in this action that the Appellees
"breached their agreement to their client and subordinated his

---

[105]Id. at p. 22:10-11, BROA, Docket Entry No. 2, p. 92:10-11.

[106]Id. at pp. 34:18-36:23, BROA, Docket Entry No. 2,
pp. 104:18-106:23.

[107]Id. at p. 37:4-7, BROA, Docket Entry No. 2, p. 107:4-7.

[108]BROA, Docket Entry No. 2, p. 69.

interests by paying themselves 70% contingency fee when the agreement entitled the lawyers to only 40%,"[109] and that

> [t]he qui tam case settled for an amount that, under the terms of the Agreement, would entitle Defendants to no more than $960,400.00 in attorney's fees. . . [but that] Defendants breached the Agreement and placed their interests ahead of Dr. Rohi's and took for themselves approximately $1,681,000.00 in attorney's fees,[110]

involve the same nucleus of operative facts at issue in the November 7, 2017, hearing to apportion the settlement proceeds. Although Appellant insists that his claims are not a collateral attack on the settlement allocation and that he is not seeking to set aside the Bankruptcy Court's November 7, 2017, Order,[111] the only way Appellant could prevail on the causes of action asserted in this action was by convincing the Bankruptcy Court that its prior order allocating the settlement proceeds was in error. Res judicata therefore bars the causes of action asserted in this suit. See Test Masters, 428 F.3d at 571.

Appellant's argument that there was no hearing on the reasonableness of Appellees' fees is not persuasive because the award of fees to the Appellees at the close of the November 7,2017, hearing implied a finding of reasonableness. See Osherow v. Ernst & Young, L.L.P. (In re Intelogic Trace, Inc.), 200 F.3d 382, 387-88

---

[109]Plaintiff's Original Petition and Request for Disclosure, pp. 2-3, BROA, Docket Entry No. 2, pp. 24-25.

[110]Id., at 4, BROA, Docket Entry No. 2, p. 26.

[111]Appellant's Brief, Docket Entry No. 8, p. 19.

(5th Cir. 2000) (citing <u>Southmark Corp. v. Coopers & Lybrand (In re</u> <u>Southmark)</u>, 163 F.3d 925, 931 (5th Cir.), <u>cert. denied,</u> 119 S. Ct. 2339 (1999)). Appellant's arguments that the claims asserted in this action did not arise until after the settlement allocation, and that the first judgment settled the dispute between Appellant and the State, whereas this dispute is based on the Appellees' failure, after this allocation, to abide by their agreements and promises to include the attorney fee allocation as part of the gross recovery to be shared with him are also unpersuasive because the award of attorney's fees from the <u>qui tam</u> action settled by Appellees was <u>the</u> disputed issue in the debtor's bankruptcy case. The hearing conducted by the Bankruptcy Court on November 7, 2017, examined the fee agreement that Appellant had with Appellees and adjusted the contingency rate downwards to 40% because the <u>qui tam</u> action settled and was not tried. Moreover, both the briefing by the parties and the extensive discussions regarding attorney's fees during the November 7, 2017, hearing notified all the parties, including Appellant, that an award of attorney's fees was at issue and the Bankruptcy Court was dividing the settlement proceeds between the Appellant, the State of Texas, and Appellees. Accordingly, the court concludes that the claims were involved in both actions.

> (e) Appellant's Claims Could Have Been Brought in the Prior Proceeding

Asserting that "[e]ven if all the elements of res judicata are satisfied, a malpractice claim remains viable unless a party 'could and should have brought [it] in the former proceeding,'"[112] Appellant advances three reasons why the claims asserted in the state court proceeding could not have been brought in the prior bankruptcy proceeding. First, Appellant argues that he was not on notice of any dispute "given that the parties had always agreed that all proceeds, no matter how allocated, would be made part of the gross recovery."[113] Second, Appellant argues that the fact that at the November 7, 2017, hearing, the Bankruptcy Court specifically addressed the parties and divided the settlement individually to the State, Appellant, and his attorneys, because

> it was immaterial to [Appellant] whether the settlement was allocated as damages or attorney's fees because [he] had an internal agreement with his Lawyers to place the fee award into a gross recovery to be split in accordance with their contract. CR25-26. [Appellant] had no notice of real or potential claims against the Lawyers until after the allocation when he was notified that the attorney fee award would not be made part of the gross recovery.[114]

Third, Appellant argues that he

> did not object to the settlement allocation because he had no reason to; the greater his attorney fee

---

[112]Id. at 56 (quoting Intelogic, 200 F.3d at 388).

[113]Id. at 58.

[114]Id.

-44-

allocation, the less money going to the State from the settlement and the more money going toward the gross recovery to [him]. The facts making up his dispute were not "plainly before" [him] at the allocation hearing because it was the Lawyer's subsequent failure to include the entire allocation as part of the gross recovery that "led to" this dispute.[115]

Citing <u>Penthouse Media Group, Inc. v. Pachulski Stang Ziehl & Jones LLP,</u> 406 B.R. 453, 461 (S.D.N.Y. 2009), Appellant argues that his claims "could never have been brought in the bankruptcy court proceedings because they were unknown and did not exist, rendering res judicata inapplicable.[116] In <u>Penthouse Media,</u> although the malpractice occurred before the fee applications were decided, the affected party only had notice of the malpractice after the fees were approved. Appellant argues that the facts of this case are analogous to those at issue in <u>Penthouse Media</u> because, at the November 7, 2017, hearing he had no reason to suspect that Appellees would breach their fee agreement with him. Appellant argues that

> this was a Rule 12(b)(6) proceeding with absolutely no allegations, and no evidence, that [he] knew that the Lawyers were going to breach their contingency fee agreement or renege on their representations until it occurred after the allocation. [Appellant's] objections were not raised at the settlement conference, nor were they intentionally waived. To the contrary, had these claims been permitted to move forward, the evidence would have shown that the Lawyers told [him] that they needed to calculate their fees as a separate award to get more money for him and assured [him] that any attorney fee

---

[115]<u>Id.</u> at 59.

[116]<u>Id.</u> at 61.

award would be included in the gross recovery to be split between them. However, after the November 7, 2017[,] hearing, and after the Lawyers induced [him] to accept the settlement and forego any appeal, the Lawyers reneged on these representations and breached their agreement. This is what "led to" this dispute.[117]

The Fifth Circuit has held that to determine whether the claims could or should have been brought, this court must decide whether: (1) Appellant had "actual or imputed awareness" at the time of the fee determination "of a real potential for claims" against the Appellees of the same type currently being asserted; and (2) "whether the bankruptcy court possessed procedural mechanisms" through which Appellant could have pursued his claims against the Appellees. Intelogic, 200 F.3d at 388. Here, any concerns about the Appellees' acts or omissions should have been brought as an objection to the Bankruptcy Court's proposed allocation. Appellant was aware that the Bankruptcy Court was considering the Appellees' fee allocation at the November 7, 2017, hearing. Appellant, however, failed to object to the allocation of settlement proceeds awarded to the Appellees. Had Appellant objected, the Bankruptcy Court would have conducted an evidentiary hearing. A hearing would have been an effective forum in which Appellant could have pursued his claims to a larger allocation of settlement proceeds had he taken the initiative to object — instead of consent — to the Bankruptcy Court's proposed allocation.

---

[117]Id. at 60-61.

Appellant's failure to do so or otherwise complain to the Bankruptcy Court in a timely manner forecloses him from attempting to pursue his claims after the fact. Appellant's breach of fiduciary duty and negligence claims should have been brought when the settlement proceeds were being allocated by the Bankruptcy Court. Appellant is therefore barred from now pursuing those claims by res judicata.

Appellant implies that he could not have brought a claim against the Appellees while the bankruptcy case was still open because he did not know that Appellees intended to keep the entire amount allocated to them and believed that their contingency fee agreement required them to share that amount with him. However, the law of the Fifth Circuit does not require a party to have understood the legal implications of the facts giving rise to a claim in order for the claim to be barred by res judicata. See In re Howe, 913 F.2d 1138, 1147 (5th Cir. 1990) (finding lender liability plaintiffs' "ignorance an inadequate excuse for their failure to raise their claims in the earlier proceedings"). In Intelogic, the court only required a "sufficient general awareness of the real potential for claims" and barred the company's claims against their accounting firm even though "the Board may not have been aware of the precise facts or reached a firm conclusion on Ernst & Young's performance." Intelogic, 200 F.3d at 389. Although the facts of the present case are not as extreme as those

of Intelogic, this court reaches the same conclusion. Appellant knew or should have known during or after the November 7, 2017, hearing that his allocation of the settlement proceeds was $720,000.00 and that Appellees' allocation was $1,681,000.00. After stating this award,[118] the Bankruptcy Court repeated its ruling to be sure that everyone understood it:

> Just to be sure then . . . I'm going to repeat it. Hopefully, it's exactly what I said before.
>
> The allocation of the settlement proceeds is now orally ordered for the reasons stated on the Record to be as follows: The $4 million will be allocated $1,599,000 to the State of Texas, $720,000 to Dr. Rohi, and $1,681,000 to the attorneys representing Dr. Rohi to be divided by the attorneys in accordance with their own agreements.[119]

Appellant could have raised any objections to this allocation in response to the Bankruptcy Court's proposed allocation. In light of the foregoing discussion, the court concludes that the Bankruptcy Court did not err by granting Appellees' motion to dismiss based on res judicata.

**D.    The Bankruptcy Court Did Not Abuse its Discretion by Denying Appellant's Request for Leave to Amend His Complaint**

Citing Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of America Co., 195 F.3d 765, 770 (5th Cir. 1999),

---

[118]Transcript of November 7, 2017, Hearing, pp. 35:22-36:2, BROA, Docket Entry No. 2, pp. 105:22-106:2.

[119]Id. at 36:24-37:7, BROA, Docket Entry No. 2, p. 106:24-107:7.

and <u>Stripling v. Jordan Production Co., LLC,</u> 234 F.3d 863, 872 (5th Cir. 2000), Appellant argues that the Bankruptcy Court abused its discretion when it denied leave to amend his complaint.[120] Appellant argues that he requested leave to amend

> to assert additional claims for fraud and amend his current claims to clarify that the alleged conduct did not occur until after the settlement allocation:

>> Plaintiff will amend his petition (or complaint) to allege additional facts and causes of action against Defendants related to their conduct surrounding the November 7, 2017 settlement hearing and subsequent breach of the contingency agreement.

>> . . .

>> Plaintiff will assert fraud related claims against Defendants. Plaintiff will allege that Defendants made material representations to Plaintiff about how the gross recovery (including any attorney fee award) would be split to induce Plaintiff's consent to the settlement at the November 7, 201[7] hearing. Plaintiff will allege that these representations were material and false because Defendants never intended to split the gross recovery with Plaintiff in accordance with [their] contingency fee agreement or their representations. Instead, Defendants intended on obtaining Plaintiff's consent to the settlement through false pretenses only to then renege on their agreement and omit the attorney fee award from the gross recovery, telling Plaintiff that the award was approved by the Court and non-appealable. Plaintiff will allege that he relied on these representations to his detriment. Plaintiff will also amend his breach of fiduciary duty

---

[120]Appellant's Brief, Docket Entry No. 8, pp. 61-63.

and DTPA claims to assert similar allegations arising out of this unconscionable conduct.[121]

Appellant argues that

> [t]his proposed amendment would demonstrate that the claims are not barred by res judicata as they could not have been brought prior to Dr. Rohi justifiably relying on the fraudulent statements and agreeing to the November 2017 allocation. Therefore, the amendment would not have been futile, and the bankruptcy court abused its discretion by denying leave.[122]

Citing <u>Test Masters,</u> 428 F.3d at 572, Appellees argue that the Bankruptcy Court correctly denied Appellant's request for leave to amend his complaint because the preclusive effect of the November 7, 2017, Order "extended to all rights of Rohi with respect to 'all or any part of the transaction, or series of connected transactions, out of which the original action arose.' In other words, the issues in both cases were based on the same nucleus of operative facts."[123]


1.   <u>Applicable Law</u>

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so

---

[121]<u>Id.</u> at 62-63.

[122]<u>Id.</u> at 63.   <u>See also</u> Reply Brief of Appellant, Docket Entry No. 16, p. 32 (reiterating that "Dr. Rohi sought leave to amend to (1) make clear the allegations to establish that the complained-of conduct did not occur until after the allocation hearing; and (2) assert fraud-related allegations for inducing Dr. Rohi to agree to the allocation").

[123]Appellees' Brief, Docket Entry No. 15, p. 47.

requires." "Although Rule 15[a] 'evinces a bias in favor of granting leave to amend,' it is not automatic." <u>Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)</u>, 88 F.3d 311, 314 (5th Cir. 1996), <u>cert. denied,</u> 117 S. Ct. 686 (1997) (citations omitted). A court may refuse leave to amend if the filing of the amended complaint would be futile, <u>i.e.,</u> "if the complaint as amended would be subject to dismissal." <u>Varela v. Gonzales,</u> 773 F.3d 704, 707 (5th Cir. 2014) (per curiam) (quoting <u>Ackerson v. Bean Dredging LLC,</u> 589 F.3d 196, 208 (5th Cir. 2009)). <u>See also Stripling,</u> 234 F.3d at 873 (interpreting "futility" in this context "to mean that the amended complaint would fail to state a claim upon which relief could be granted"). A court's denial of a motion to amend is generally reviewed for abuse of discretion, but when a court denies a motion for leave to amend on grounds of futility, courts apply a de novo standard of review identical, in practice, to the standard used for reviewing a dismissal under Rule 12(b)(6). <u>Varela,</u> 773 F.3d at 707 (citing <u>City of Clinton, Arkansas v. Pilgrim's Pride Corp.,</u> 632 F.3d 148, 152 (5th Cir. 2010)).

2. <u>Application of the Law to the Record</u>

For the reasons stated in § III.C, above, the court has concluded that the Bankruptcy Court did not err by granting Appellees' motion to dismiss based on res judicata. Appellant's argument that he sought leave to "allege that [Appellees] made material representations to [him] about how the gross recovery (including any attorney fee award) would be split to induce [his]

consent to the settlement at the November 7, 201[7] hearing," shows that the conduct about which he is complaining occurred before — not after — the settlement allocation. The court therefore concludes that the Bankruptcy Court did not err by denying Appellant's request for leave to amend because amendment would have been futile. See Varela, 773 F.3d at 707. An amended complaint may be denied for futility when the plaintiff seeks to add claims that are barred by res judicata because the amendment does not to cure the deficiency of the original complaint—failure to state a claim upon which relief could be granted. Id. at 712. See also Donnelly v. JPMorgan Chase Bank, N.A., No. CIV.A. H-15-1671, 2015 WL 6701922, at *1 (S.D. Tex. November 3, 2015) (finding that amendment would be futile where "new claims are based on the same nucleus of operative facts as the earlier case . . . and would thus be barred by res judicata").

## IV.  Conclusions and Order

For the reasons stated in § III, above, the Bankruptcy Court's Memorandum Opinion dated February 21, 2019 (Adv. Doc. No. 32) is **AFFIRMED**; and the Bankruptcy Court's Dismissal Order dated February 21, 2019 (Doc. 420 and Adv. Doc. No. 33) are **AFFIRMED**.

**SIGNED** at Houston, Texas, on this the 17th day of December, 2019.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE